AO 91 (Rev. 11/11) Criminal Complaint

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**

MAY - 7 2026

AT_____ O'CLOCK

John M. Domurad, Clerk - Plattsburgh

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| v. | ) |
| **Ariovaldo Guillermo CATUN PAAU,** | )     Case No.   8:26-PO-44 (GLF) |
| **and Wenderger COLON TUCUBAL,** | ) |
| | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 4, 2026 in the county of Franklin in the Northern District of New York the defendants violated:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1325(a)(1) | Entry Without Inspection. |

This criminal complaint is based on these facts:
See attached affidavit.

☒    Continued on the attached sheet.

*Andrew Kraengel*   05/05/2026   2:05pm
*Complainant's signature*

U.S. Border Patrol Agent Andrew L. Kraengel
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rues of Criminal Procedure.

Date:   *MAY 7, 2026*

*Judge's signature*

City and State:    Plattsburgh, New York      Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

*United States of America v* **Ariovaldo Guillermo CATUN PAAU et al.**

I, Andrew L. Kraengel, hereby depose and state under penalty of perjury:

1.      I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP) assigned to the Burke Border Patrol Station. I have been a law enforcement officer for CBP since 2011 beginning with the U.S. Border Patrol as an Agent assigned to Ajo Station in Arizona. In 2014, without a break in service I became a Customs and Border Protection Officer, assigned to the Buffalo, NY Port of Entry and later to the Massena, NY Port of Entry. In 2024, I reinstated with the U.S. Border Patrol.

2.      My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agent's authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Centers in Artesia, New Mexico & Glynco, Georgia in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.      This affidavit is based in part on information provided to me by others and from law enforcement and immigration databases. It does not set forth all of my knowledge about the investigation.

4.      I submit this affidavit in support of a criminal complaint charging defendants Ariovaldo Guillermo CATUN PAAU and Wenderger COLON TUCUBAL with violating 8 U.S.C. § 1325(a)(1), which prohibits any alien, that is, any person who is not a citizen or national of the United States, from entering or attempting to enter the United States "at any time and place other than as designated by immigration officers."

## Probable Cause

5.      On May 3, 2026, at approximately 10:35 PM, Border Patrol Agents assigned to the Burke Border Patrol Station, observed via electronic surveillance equipment, a white Mazda CX-5, bearing MA license plates

*United States of America v* **Ariovaldo Guillermo CATUN PAAU et al.**

6HLR17, in the Burke Station area of responsibility. Agents set up to encounter the vehicle leaving the Malone, NY area, however, were unable to initially locate the vehicle. Roughly one hour later the vehicle was located at the Red Roof Inn in Malone, NY.

6.      At approximately 2:55 AM, May 4, 2026, Border Patrol Radio Dispatch (C-100) notified Agents that they were contacted by RCMP and informed of at least one individual detected in Canada walking south towards the U.S./Canada International Border in the area around Mary Riley Rd, in Fort Convington, NY. Agents acknowledged and responded to the area. The area around Mary Riley Rd is an area frequently used for smuggling activity and has recently had a surge in illegal cross-border activity due to its proximity to the U.S. Canada International Border and multiple points of egress.

7.      Agents positioned their marked Border Patrol vehicles along NY State Route 37 in the town of Westville, NY in anticipation of encountering a smuggling vehicle. At 3:20 AM, the white Mazda CX-5 that had been parked at the Red Roof Inn was observed travelling north on NY State Route 37. Based on the experience of the agents, this vehicle travelling northbound at 3:20 in the morning, bearing out-of-state license plates and heading towards the area where there was at least one individual suspected of illegally crossing the border into the U.S., was an immediate red flag. Agents then moved their vehicles and parked at the intersection of NY State Route 122 and NY State Route 37 suspecting that they would soon see the Mazda CX-5 travelling back southbound on NY State Route 37.  Roughly 20 minutes later, the Mazda was seen travelling south on NY State Route 37. As the Mazda approached the Agents position, the Agents activated their emergency take-down lights to illuminate the Mazda as it passed by. Agents could see that there were at least four individuals in the vehicle and that the rear storage compartment appeared to be filled with baggage.

8.      After the CX-5 passed, Agents pulled out behind the vehicle and activated their emergency lights and sirens and executed a vehicle stop in front of the Westville Fire Station. Agents approached the vehicle and identified themselves as U.S. Border Patrol Agents in both the English and Spanish language. Agents asked the driver, later identified as H.E.R.E., where he was coming from and he did not respond. Agents then asked who

*United States of America v* **Ariovaldo Guillermo CATUN PAAU et al.**

the other individuals in the vehicle were and the driver claimed that they were his friends. Agents asked the driver to state his citizenship and he claimed to be from Guatemala. For investigative purposes, the driver was then asked to step out of the vehicle, was then searched, and detained in the back of a marked Border Patrol service vehicle. Agents then asked the passengers in the vehicle to state their citizenship. All claimed to be citizens of Guatemala. The front seat passenger appeared to have clean and dry shoes and clothing, a stark difference from the backseat passengers. Agents suspected that he travelled to the area with the driver, which was later shown to be accurate. Agents then asked the backseat passengers, later identified as Ariovaldo Guillermo CATUN PAAU and Wenderger COLON TUCUBAL to step out one at a time and Agents asked both if they had illegally crossed the border earlier in the night and they both claimed that they had.

9.    None of the occupants in the vehicle were in possession of any documents that would allow them to enter, pass through or remain in the United States legally. At this time, all occupants from the Mazda CX-5 were placed under arrest and transported to the Burke Border Patrol Station for further interviews and processing.

10.    At the station, biographical information and fingerprints were entered into Department of Homeland Security databases for all four subjects. Record checks confirmed information previously gathered roadside. All passengers were found to be illegally present in the United States. Records checks verified that CATUN PAAU and COLON TUCUBAL did not have legal status or documentation to be in pass through or remain within the United States.

11.    While at the station, Agents attempted to conduct custodial interviews. One of the subjects, CATUN-PAAU requested an attorney before questioning and the other, Wenderger COLON-TUCUBAL agreed to speak and answer Agents questions without the presence of an attorney. The interview of COLON-TUCUBAL was conducted in Spanish language using an approved interpretation service. During the interview the subject freely admitted to crossing the border illegally with the other backseat passenger, later identified as CATUN-PAAU.

*United States of America v* **Ariovaldo Guillermo CATUN PAAU et al.**

12.    Nationals and Citizens of Guatemala are required to apply for a visa if they seek to enter the United States.  Guatemalan citizens who are issued a visa by the United States government are required to present the visa and the person's passport to an immigration official at a Port of Entry as he or she seeks admission into the United States. Ariovaldo Guillermo CATUN-PAAU and Wenderger COLON-TUCUBAL do not possess valid visas and records show that they have not applied for one.  If CATUN-PAAU and COLON-TUCUBAL had presented themselves to a Port of Entry and asked permission to enter the United States, they would have been denied admission as they each do not possess a valid United States visa.

### Conclusion

13. Based on the foregoing, I respectfully request the Court issue the proposed complaint charging the defendants with improper entry by an alien, in violation of 8 U.S.C. § 1325(a)(1).

Andrew L. Kraengel      05/05/2026    2:05pm
Andrew L. Kraengel
United States Border Patrol

Attested to by the affiant in accordance with Rule 4.1
of the Federal Rules of Criminal Procedure.

Date: *MAY 7, 2026*

Hon. Gary L. Favro
United States Magistrate Judge